**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ERNESTINE WELCH,

                                Plaintiff,                  1:23-cv-664 (BKS/DJS)

v.

BIO-REFERENCE LABORATORIES, INC.,

                                Defendant.

**Appearances:**

*Plaintiff pro se*:
Ernestine Welch
Hudson, NY 12534

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff pro se Ernestine Welch filed this action seeking to recover the "lost time-value of money" that Defendant allegedly wrongfully withheld as taxes from an $18,000 settlement in a prior action. (Dkt. No. 1); *see Welch v. Boi-Reference Laboratories, Inc. ("Welch I")*, No. 19-cv-846 (BKS/DJS). This matter was referred to United States Magistrate Judge Daniel J. Stewart who, on July 24, 2023, granted Plaintiff's application to proceed in forma pauperis, and issued a Report-Recommendation, recommending that Plaintiff's Complaint be dismissed for failure to allege federal question jurisdiction, but recommended that leave to amend be granted. (Dkt. No. 6). Plaintiff filed an Amended Complaint on September 8, 2023. (Dkt. No. 9). On February 20, 2024, Magistrate Judge Stewart issued a second Report-Recommendation, recommending that Plaintiff's Amended Complaint be dismissed with leave to amend for failure to adequately allege

the amount in controversy necessary to establish diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 11). On April 18, 2024, this Court adopted the second Report-Recommendation in its entirety. (Dkt. No. 15). On May 22, 2024, Plaintiff filed a Second Amended Complaint, which was referred to Magistrate Judge Stewart for initial review. (Dkt. No. 16). On September 19, 2024, Magistrate Judge Stewart issued a Report-Recommendation recommending dismissal of Plaintiff's Second Amended Complaint. (Dkt. No. 17). Presently before the Court are Plaintiff's objections to the Report-Recommendation. (Dkt. No. 20). For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

## II.    STANDARD OF REVIEW

This Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (quotation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III.    REPORT-RECOMMENDATION

In the Report-Recommendation Magistrate Judge Stewart recommended dismissal of the "federal discrimination claims regarding Plaintiff's past employment with Defendant," (Dkt. No. 17, at 2 (citing Dkt. No. 16, at 8)), on the ground that "those claims . . . were expressly resolved as part of the settlement in *Welch I*," and Plaintiff could not "relitigate those claims here," (*id.* at 3). Turning to Plaintiff's remaining state law claims, Magistrate Judge Stewart noted that the Court had previously dismissed the Amended Complaint for lack of diversity jurisdiction under 28 U.S.C. § 1332, because "Plaintiff had not sufficiently alleged that any claim regarding the taxation of [the $18,000 in] settlement proceeds, or the lost time value of money satisfied the $75,000 amount in controversy requirement." (Dkt. No. 17, at 3 (citing Dkt. No. 11, at 3–4)). After reviewing the Second Amended Complaint, which alleged racial discrimination claims in violation of state law, as well as state law claims of fraud and defamation stemming from Defendant's allocation of the $18,000 settlement of *Welch I*, Magistrate Judge Stewart found "[n]othing" that changed the amount in controversy requirement "given that the entire amount of the settlement in *Welch I* was $18,000." (*Id.* at 3). Magistrate Judge Stewart nonetheless considered the viability of Plaintiff's newly alleged claims.[1]

As to Plaintiff's claims of racial discrimination, in violation of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 196, Magistrate Judge Stewart concluded that even

---

[1] Plaintiff's allegation regarding the lost time value of the money deducted from her settlement payment as taxes does not appear to be an independent cause of action, but a theory of injury for her present claims. *See Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424, 428 (S.D.N.Y. 2019) (finding the "temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing" for the plaintiff's two causes of action, deceptive acts and practices in violation of New York General Business Law § 349 and conversion under New York law, based on the defendant's allegedly wrongful charging of state sales tax on purchases when no sales tax was owed); *Rosario v. Icon Burger Acquisition LLC*, No. 21-cv-4313, 2022 WL 17553319, at *3, 2022 U.S. Dist. LEXIS 222321, at *7 (E.D.N.Y. Dec. 9, 2022) (finding lost time value of money theory of injury sufficiently alleged Article III standing for New York Labor Law claim, explaining that courts have recognized that "the late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL.") (quotation marks omitted) (citing cases).

assuming such claims were not "covered by the settlement in *Welch I*," because the conduct "is alleged to have occurred in 2018," "such a claim would now be barred by the three year statute of limitations governing such claims." (*Id.* at 3). As to Plaintiff's claims of fraud and defamation, Magistrate Judge Stewart found the Second Amended Complaint failed to satisfy the requirements of Federal Rule of Civil Procedure 9(b), which requires that a pleading "state with particularity the circumstances constituting fraud," and that Plaintiff failed to allege that Defendant made a false statement, a necessary element of a defamation claim. (*Id.* at 4).

## IV.    DISCUSSION

### A.    Objections to the Report-Recommendation

Plaintiff objects to Magistrate Judge Stewart's calculation of the amount in controversy, asserting that the Second Amended Complaint "seeks damages at stake for more than $75,000, based on Lost Time-value of money." (Dkt. No. 20, at 9). Plaintiff objects to Magistrate Judge Stewart's conclusion that the statute of limitations bars her state law racial discrimination claims, arguing that she is entitled to equitable tolling as she has been litigating this matter since 2019, when she commenced *Welch I*. (*Id.* at 11). Plaintiff objects to dismissal of her fraud claim on the ground that the transcript of the February 16, 2021 hearing in *Welch I* show that Defendant knew the settlement payment was "misrepresented." (*Id.*). Plaintiff also objects to the dismissal of her defamation claim, arguing that Defendant's issuance of the settlement check stating that Plaintiff is an "employee" and characterizing the pay as "severance pay" constitutes a false statement. (*Id.* at 11–12).

Plaintiff has not raised any objections to the Report-Recommendation's recitation of the procedural history, summary of legal standards, or recommended dismissal of her federal discrimination claims. (*See* Dkt. No. 17, at 1–3). The Court therefore adopts these aspects of the Report-Recommendation, finding no clear error therein. *See Kruger*, 976 F. Supp. 2d at 296.

4

B.    **Analysis**

1.    **Amount In Controversy**

Plaintiff appears to object to Magistrate Judge Stewart's conclusion that tax consequences of the $18,000 settlement at issue in this case did not satisfy the $75,000 amount in controversy requirement of the diversity statute on the ground that damages should include the "damages based on the nature initial claims of suit," namely, the employment discrimination claims that were at issue in *Welch I*. (Dkt. No. 20, at 9). However, as Magistrate Judge Stewart previously explained, Plaintiff's present claim concerning the lost time-value of the money deducted as taxes from the $18,000 settlement of *Welch I*, "is a private dispute between private parties solely about the proper allocation of a settlement payment." (Dkt. No. 17, at 3). Plaintiff cites no factual or legal basis for adding the initial value of the discrimination claims that were settled for $18,000 in *Welch I* to the present action, which seeks a restoration of the $5,497.80 in withheld taxes from the $18,000 settlement. (Dkt. No. 20, at 8–9). Further, Plaintiff's lost time-value of money, fraud, and defamation claims are all based on the characterization of the settlement as severance, which subjected her to damages in the form of increased tax consequences in the amount of $5,497.80 and thus constitute three theories of recovery for one award of damages. *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 301 (E.D.N.Y. 2005) (explaining that "[n]o case . . . allows the aggregation of claims which seek the same damages in claims under varying theories"). But even aggregated, the amount in controversy does not exceed $75,000.

Even if Plaintiff satisfied the amount in controversy, the Court agrees with Magistrate Judge Stewart that Plaintiff's remaining discrimination, fraud, and defamation claims must be dismissed.

### 2. State Racial Discrimination Claims

As Plaintiff concedes, her NYSHRL racial discrimination claims arose in 2018. (Dkt. No. 20, at 10–11). NYSHRL racial discrimination claims "are subject to a three-year statute of limitations." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011) (citing *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). Plaintiff commenced this action on June 5, 2023. (Dkt. No. 1). Plaintiff argues, however, that she is entitled to equitable tolling during the pendency of *Welch I*, where she began litigating her Title VII racial discrimination claims in 2019, and acted diligently through the appeal process. (Dkt. No. 20, at 11). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Here, nothing in the Second Amended Complaint or elsewhere in the record suggests that some "extraordinary circumstance" stood in the way of Plaintiff filing state racial discrimination claims until she filed the instant action on June 5, 2023. *Id.* Accordingly, Plaintiff's objection is without merit.

### 3. Fraud

Plaintiff's fraud claim is based on the settlement check in which Defendants by characterizing the payment as "severance pay" allegedly "presented false character of pay which resulted in tax damages, and loss of income." (Dkt. No. 16, at 10). Plaintiff objects to Magistrate Judge Stewart's finding that she failed to specifically identify the fraudulent representations at issue, asserting that Defendant misrepresented the settlement payment as severance pay, and "provided false nature of claim," and Plaintiff "relied on it to seek overpayment in taxes." (Dkt. No. 20, at 11(citing *Welch I*, Dkt. No. 42, at 11 (transcript of status conference where Defendant's attorney stated that "some person internally at the company indicated severance" on the earning statement accompanying Plaintiff's settlement payment )).

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 280 (S.D.N.Y. 2021) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402-03 (2d Cir. 2015)). A claim for common-law fraud is subject to the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which require that the complaint "state with particularity the circumstances constituting fraud." *Id.* at 280–81 (quoting Fed. R. Civ. P. 9(b)); *see also MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023).

Here, while it is clear that Plaintiff claims her settlement payment should not have been designated as severance pay, there are no factual allegations that would support a plausible inference that at the time of issuance of the payment, Defendant knew the "severance" designation to be false, or interfered at some later time with Plaintiff's efforts to recover the taxes deducted by making a false representation to the Internal Revenue Service or otherwise. Accordingly, Plaintiff's objection to dismissal of her fraud claim is without merit.

### 4. Defamation

Plaintiff's defamation claim alleges that Defendant's "false statement of facts"—specifically, that the settlement was "severance pay"—"caused tax damages and loss of income." (Dkt. No. 16, at 11). Magistrate Judge Stewart recommended dismissal based on Plaintiff's failure to allege "that Defendant made a false statement." (Dkt. No. 17, at 4). Plaintiff objects asserting that Defendant engaged in "employment-related defamation" and asserts that this case involves "false statements made by employer about an employee's pay," that Defendant failed to state that the settlement payment was for "discrimination, back pay," and that this statement harmed her financially. (Dkt. No. 20, at 11–12).

7

"Under New York law, to state a claim for defamation, a plaintiff must allege '(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.'" *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 169–70 (S.D.N.Y. 2021) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). Even assuming the statement that the settlement was "severance" pay constitutes a false statement sufficient for purposes of a defamation claim, *see Davis v. Boeheim*, 24 N.Y.3d 262, 269 (N.Y. 2014) ("a false statement 'that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace.'" (quoting *Thomas H. v Paul B.*, 18 N.Y.3d 580, 584 (N.Y. 2012)), there are no allegations that plausibly allege special damages or defamation per se, *see Kesner*, 515 F. Supp. 3d at 171 ("Special damages are those that involve the 'loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation.'") (citation omitted); *id.* (explaining that "[s]tatements that are defamatory per se 'are actionable without pleading and proof of special damages,'" including "those that 'charge the plaintiff with a serious crime' and those that 'tend to injure another in his or her trade, business or profession.'") (citations omitted). Accordingly, Plaintiff's objection to the recommended dismissal of her defamation claim is without merit.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 17) is **ADOPTED**; and it is further;

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 16) is **DISMISSED without prejudice and without leave to amend**; and it is further

**ORDERED** that the Clerk is directed to close this case and serve a copy of this Order on

Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  <u>February 21, 2025</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

Case 1:23-cv-00664-BKS-DJS   Document 21   Filed 02/21/25   Page 10 of 21
Rosario v. Icon Burger Acquisition LLC, Not Reported in Fed. Supp. (2022)

2022 WL 17553319

2022 WL 17553319
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Joseph ROSARIO, Noah Zaharia, and
Olivia Spell, individually and on behalf
of all others similarly situated, Plaintiffs,

v.

ICON BURGER ACQUISITION
LLC dba Smashburger, Defendant.

21-CV-4313 (JS)(ST)
|
Signed December 9, 2022

**Attorneys and Law Firms**

For Plaintiffs: Yitzchak Kopel, Esq., Alec Mitchell Leslie, Esq., Bursor & Fisher, P.A., 888 7th Avenue, 3rd Floor, New York, New York 10106.

For Defendant: Daniel Sergio Gomez-Sanchez, Esq. Matthew R. Capobianco, Esq., Littler Mendelson, P.C., 290 Broadhollow Road, Suite 305, New York, New York 11747.

### MEMORANDUM & ORDER

SEYBERT, District Judge:

**\*1** Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (hereafter "SAC") pursuant to Federal Rules of Civil Procedure 12(b) (1) and 12(b)(6). (Mot. at 1, ECF No. 29.) Defendant argues: (1) that Plaintiffs lack Article III standing because they have failed to specify a particularized and actual injury; and (2) that New York Labor Law ("NYLL") § 191 does not afford a private right of action for untimely wages that have been paid in full. (Support Memo, ECF No. 32, at 1-2.) If its motion is not granted, Defendant seeks an order pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, compelling Plaintiff Rosario to individually arbitrate his claims. (Id.)

For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

### BACKGROUND

The Court presumes familiarity with the facts underlying this case which are detailed in the Court's earlier decision. See Rosario v. Icon Burger Acquisition LLC, No. 21-CV-4313, 2022 WL 198503, at \*1-2 (E.D.N.Y. Jan. 21, 2022) (hereafter "Rosario I"). [1] Nevertheless, the Court provides the following summary for the reader's convenience. [2]

"Defendant owns a chain of hamburger restaurants that employs thousands of manual workers in the State of New York." (SAC, ECF No. 26, ¶ 10.) Plaintiffs were each employed by Defendant in various capacities; however, all Plaintiffs aver that twenty-five percent of their job responsibilities involved manual labor. (Id. ¶¶ 11-13.)

Plaintiffs allege that under NYLL, Article 6, § 191, Defendant was required to pay its manual workers "on a weekly basis unless they receive[d] an express authorization [to the contrary ... from the New York State Department of Labor Commissioner." (Id. ¶ 2.) Plaintiffs allege that Defendant did not receive such authorization and thus violated NYLL § 191 by paying its manual workers biweekly instead of weekly. (Id. ¶¶ 3, 5.)

Plaintiffs originally made identical allegations in their First Amended Complaint. (ECF No. 10.) However, in Rosario I, this Court determined that Plaintiffs' complaint was "barebones" and "contain[ed] no facts from which the Court could plausibly conclude that [they] actually suffered the sort of harm that would entitle [them] to relief." Rosario I, 2022 WL 198503, at \*3. Indeed, Plaintiffs' First Amended Complaint simply stated that "Defendant failed to pay Plaintiff and the Class on a timely basis as required by the NYLL," and, thus, Plaintiff and the class were entitled to damages. Id. Recognizing that under Maddox and TransUnion Plaintiffs' complaint was insufficient to allege a concrete injury but acknowledging that "the late payment of wages [could] constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL," id., the Court sua sponte directed Plaintiffs to amend their complaint. Id. at \*4.

**\*2** On February 21, 2022, Plaintiffs filed their SAC. (See SAC, ECF No. 26.) While many of the factual allegations remain the same, Plaintiffs now allege that they were injured by Defendant's late payments because they were "temporarily deprived of money owed." (Id., ¶¶ 11-13.) Consequently, they "could not invest, earn interest on, or otherwise use" money that was rightfully theirs and that "every day that said money

Case 1:23-cv-00664-BKS-DJS   Document 21   Filed 02/21/25   Page 11 of 21

Rosario v. Icon Burger Acquisition LLC, Not Reported in Fed. Supp. (2022)

2022 WL 17553319

was not paid ... in a timely fashion, [Plaintiffs] lost the time value of that money." (Id.)

Defendant filed the instant motion on March 21, 2022, seeking dismissal of the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6). (See Mot. at 1; see also Support Memo at 1.) Defendant argues that: (1) Plaintiffs lack Article III standing because they fail to specify a particularized and actual injury; (2) NYLL § 191 does not afford a private right of action for untimely wages that have been paid in full; and (3) if the Motion to Dismiss is not granted, that Plaintiff Rosario's claim must be dismissed because he is bound by agreement to individually arbitrate and not litigate his claims. (Support Memo at 1-2.)

Plaintiffs filed their opposition on April 18, 2022. (Opp'n, ECF No. 35). In sum, Plaintiffs counter that: (1) they have Article III standing because they have adequately pled a lost time value of money theory of injury; (2) appellate state court precedent already establishes a private right of action under NYLL § 191; and (3) Plaintiff Rosario consents to his dismissal from this action.

## ANALYSIS

### I. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). While the Court must "generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.' " Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Cortland St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 790 F.3d 411, 417 (2d Cir. 2015)). Thus, while the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff ... 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.' " Rosenberg v. McCarthy, Burgess & Wolff, Inc., No. 21-CV-2199, 2022 WL 3030390, at *2 (E.D.N.Y. Aug. 1, 2022) (quoting Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)). "Ultimately, 'the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence

that it exists.' " Id. (quoting Tandon v. Captain Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)).

"The standard of review for a motion to dismiss under Rule 12(b)(6) ... is 'substantively identical' to the Rule 12(b)(1) standard." Epstein v. JPMorgan Chase & Co., 2014 WL 1133567, at *5 (S.D.N.Y. Mar. 21, 2014) (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)), abrogation on other grounds recognized by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

### II. Discussion

#### A. Plaintiffs have Article III Standing.

**\*3** Establishing Article III standing requires a plaintiff to show: "(1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.' " Maddox v. Bank of N.Y. Mellon Tr. Co., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

"To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. at 62 (citing Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). In analyzing whether a harm is "concrete" for purposes of Article III standing, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to

Rosario v. Icon Burger Acquisition LLC, Not Reported in Fed. Supp. (2022)

2022 WL 17553319

a harm 'traditionally' recognized as providing a basis for a lawsuit in American Courts." TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2204 (2021). Additionally, "certain harms readily qualify as concrete injuries under Article III," the most obvious being "traditional tangible harms, such as physical harms and monetary harms." Id.

While "the pleading standard for constitutional standing is lower than the standard for a substantive cause of action," a plaintiff must, nevertheless, " 'plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief.' " Maddox, 19 F.4th at 65-66 (quoting Harry v. Total Gas & Power N. Am., Inc., 889 F.3d 104, 110 (2d Cir. 2018)). Thus, "[a]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.' " Wilson v. Mastercard Inc., No. 21-CV-5930, 2022 WL 3159305, at *3 (S.D.N.Y. Aug. 8, 2022) (quoting Spokeo Inc. v. Robins, 578 U.S. 330, 338 (2016)).

Here, Plaintiffs affirmatively allege that they have been injured by Defendant's frequency of pay violations because "every day that [Plaintiffs'] money was not paid ... in a timely fashion" they each lost the time value of that money. (SAC at ¶¶ 11-13.) Specifically, Plaintiffs state that they were deprived of the opportunity to "invest, earn interest on, or otherwise use" their improperly withheld wages. (Id.) This Court and many others within this Circuit have recognized that "the late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL." Rosario I, 2022 WL 198503, at *3; see also Porsch v. LLR, Inc., 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing."); Caul v. Petco Animal Supplies, No. 20-CV-3534, 2021 WL 4407856, at *4 (S.D.N.Y. Sept. 27, 2021) ("[T]he late payment of wages is a concrete harm."); Gillet v. Zara USA, Inc., No. 20-CV-3734, 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022) ("Irrespective of the fact that Plaintiff ultimately received the entire sum of wages he was owed, this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III."); Elhassa v. Hallmark Aviation Servs., L.P., No. 21-CV-9768, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022) (citing Caul and noting that the Caul court held "the late payment of wages is a concrete harm"); Levy v. Endeavor Air Inc., No. 21-CV-4387, 2022 WL 16645829, at *3 (E.D.N.Y. Nov. 1, 2022) ("[C]ourts have routinely found that the time value of money is real and

concrete, and those courts have therefore found that wrongful deprivation of such time value is a concrete harm.").

**\*4** Here, it is Plaintiff's burden to prove standing and it would have been improper for the Court to infer injury from Defendant's frequency of pay violation when Plaintiff failed to affirmatively plead any injury whatsoever in Rosario I. See Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't Treasury, 773 F.3d 243, 246 (11th Cir. 2014) (finding that where plaintiff did not mention interest or suggest "specific plans to invest its money into an interest-bearing asset," the court could not "hypothesize or speculate about the existence of an injury [plaintiff] did not assert"); Epstein v. JPMorgan Chase & Co., No. 13-CV-4744, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) (Declining to infer standing based on plaintiff's lost "opportunity to use and/or earn interest" where plaintiff failed to "make this claim in his papers" and, therefore, dismissing plaintiff's complaint for lack of Article III standing); Barber v. Lincoln Nat'l Life Ins. Co., 260 F. Supp. 3d 855, 862 (W.D. Ky. 2017) ("The complaint makes no particularized allegation that [plaintiff] lost the time value of money ... It may be implied by the nature of [plaintiff's] allegations that ... he lost the opportunity to grow that money through investment. But the Court cannot find injury via implication....").

While Plaintiff's current allegations remain "on the light side and do not contain detail on how the late payment specifically harmed [them]," Elhassa, 2022 WL 563264, at *2 (emphasis added), the Court agrees with other courts in this Circuit that it is sufficient for Plaintiffs to affirmatively plead injury through the allegation that they were "temporarily deprived of money owed," and, consequently, were unable to "invest, earn interest on, or otherwise use" money that was rightfully theirs. (SAC at ¶¶ 11-13.) Accord Harris v. Old Navy, LLC, No. 21-CV-9946, 2022 WL 16941712, at *4 (S.D.N.Y. Nov. 15, 2022) (distinguishing the Harris complaint with the complaint in Rosario I noting that "the complaint in Rosario [I] ... [never describe[d]] what the harm was" but that Harris had affirmatively alleged that she was denied the ability to " 'invest, save, or purchase' using the wages she was owed," thereby satisfying the injury requirements of Article III standing).

B. Section 198 of the NYLL Provides a Private Right of Action for a Violation of Section 191.

Section 191 of the NYLL states that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned" unless the Commissioner of the New York Department of

Rosario v. Icon Burger Acquisition LLC, Not Reported in Fed. Supp. (2022)

2022 WL 17553319

Labor "authorize[s]" the employer "to pay less frequently than weekly." NYLL § 191(a)(i)-(ii). Further, under § 198(1-a), where an employee prevails after instituting a wage claim:

> [T]he court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest ... and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

NYLL § 198(1-a).

In interpreting state law, a district court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010) (citing Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999)).

Defendant argues that NYLL § 191 "does not afford a private right of action for untimely paid full wages." (Support Memo at 11.) In so arguing, Defendant concedes, and Plaintiffs acknowledge, that the First Department has already opined on this issue and affirmatively held that, "[NYLL] § 198(1-a) expressly provides a private right of action for a violation of [NYLL] § 191." Vega v. CM and Assocs. Constr. Mgmt., LLC, 107 N.Y.S.3d 286, 288 (N.Y. App. Div. 1st Dep't 2019). Further, the Vega court held that "the term underpayment," as used in § 198(1-a), "encompasses the instances where an employer violates the frequency requirements of Section 191(1)(a) but pays all wages due before the commencement of an action." Id. As such, Vega forecloses the arguments raised by the Defendant. Indeed, most district courts addressing the same issues presented here have ultimately followed Vega, including this Court.[3] See Sorto v. Diversified Maint. Sys., LLC, No. 20-CV-1302, 2020 WL 7693108, at *2 (E.D.N.Y. Dec. 28, 2020); Caul, 2021 WL 4407856 at *2-3 (collecting cases); Gillett, 2022 WL 3285275 at *11 (collecting cases).

**\*5** Additionally, the Court is unconvinced by Defendant's argument that the Court of Appeals' decision in Konkur

"cannot be readily reconciled with" with the First Department's holdings in Vega. In fact, several district courts within this Circuit have already analyzed this issue and all have concurred that Konkur does not affect the core holding of Vega. See Mabe v. Wal-Mart Assocs., Inc., 2022 WL 874311, at *6 (holding "Konkur does not stand for the propositions that the late payment of wages is not the underpayment of wages, or that the late payment of wages is not a wage claim privately actionable under Section 198(1-a)"); Elhassa, 2022 WL 563264, at *2 ("Konkur [concerned] ... a private right of action for a different provision of the NYLL. Vega rested on a different ground. Vega did not hold that a private right of action was implied for the late payment of wages [but] ... that the NYLL expressly provides a private right of action for the late payment of wages." (internal citations and alterations omitted) (emphasis added)); Harris, 2022 WL 16941712, at *5 ("[W]e cannot say that [Konkur] provides the level of 'persuasive data' ... [needed] to conclude that the Court of Appeals would reject the result in Vega. Most importantly, Vega held that the NYLL expressly provided for a private right of action to enforce NYLL § 191(1)(a) in § 198(1-a), which contemplates an action instituted in the courts upon a wage claim by an employee. Nothing in Konkur undermines this statutory interpretation, because Konkur addresses an implied cause of action." (internal citations omitted)). This weight of authority persuades the Court that Konkur does not preclude Plaintiffs' claim.

Similarly, the Court declines Defendant's invitation to "revisit its reliance on Vega" based upon its argument that any potential liquidated damages recovery based upon Plaintiffs' " 'lost time value of money' theory of injury ... impermissibly invites this case to become mired in questions over whether such remedies comport with Due Process and the Eighth Amendment's Excessive Fines Clause." (Support Memo at 14.)

In Vega, in addition to holding that "Labor Law § 198(1-a) expressly provides a private right of action for a violation of Labor Law § 191," the First Department further held, notwithstanding the fact that an employer may pay all wages due before the commencement of an action, that "liquidated damages may be available under Labor Law § 198(1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages." Vega, 175 A.D.3d at 288. In so holding, the First Department found persuasive Brooklyn Savings Bank v. O'Neil, in which the Supreme Court held, in the context of the Fair Labor Standards Act, "that, regardless of

Rosario v. Icon Burger Acquisition LLC, Not Reported in Fed. Supp. (2022)

2022 WL 17553319

Case 1:23-cv-00664-BKS-DJS    Document 21    Filed 02/21/25    Page 14 of 21

whether an employee has been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the 'failure to pay the statutory minimum on time." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)).

Defendant invites the Court to revisit its reliance on Vega or, alternatively, to dismiss this case for lack of standing to "avoid introducing [ ] grave Constitutional concerns into this case." (Support Memo at 15.) Defendant argues that the Due Process Clause "precludes the imposition of statutory penalties in amounts that are 'wholly disproportioned to the' harm claimed by a plaintiff," and that "the Eighth Amendment's Excessive Fines Clause prohibits the imposition of statutory penalties bearing no reasonable 'relationship to the gravity of the offense that [the statute] is designed to punish.' " (Id. at 14–15.) However, while Defendant may ultimately be correct that the "potential liquidated damages recovery [in this case] will astronomically exceed the actual claimed, 'time value of money' injuries pleaded by the Plaintiffs," (id. at 14), this argument is premature at the dismissal stage. See Rodrigue v. Lowe's Home Ctrs., LLC, No. 20-CV-1127, 2021 WL 3848268, at *6 (E.D.N.Y. Aug. 27, 2021) (Holding that where "there has been no liquidated damages award, and there is no record on which to assess whether an award would be excessive" a challenge of this sort is "premature" at the motion to dismiss stage). Moreover, even assuming Defendant is proven correct that a potential liquidated damages award would be disproportionate to the injury alleged by Plaintiffs, dismissal is not the appropriate remedy; rather, a reduction in the

amount of damages may be. Id. ("Even if defendants were correct that liquidated damages equal to 'the amount of all late payments' would violate the Due Process Clause, defendants have offered no reason why they would be entitled to dismissal of plaintiff's claim—rather than a reduction in damages."). Thus, the Court declines Defendant's invitation. See Sorto, 2020 WL 7693108, at *3 (stating the Court "sees no reason to depart from its analysis" that found Vega persuasive). To the extent not explicitly addressed, the Court has considered the remainder of Defendant's arguments on this point, and it finds them to be without merit.

### C. The Court Need Not Compel Plaintiff Rosario to Individually Arbitrate His Claim

**\*6**  The Court need not compel Plaintiff Rosario to individually arbitrate his claims given Rosario's subsequent May 4, 2022 notice that he is voluntarily dismissing his claims against Defendant without prejudice. (See Notice of Voluntary Dismissal, ECF No. 38). Consequently, this issue is moot.

### CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 29) is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17553319

---

## Footnotes

1    The Court's decision is filed in the Case Docket at ECF No. 24. Herein, when citing Rosario I, the Court uses the Westlaw citation.

2    The facts are drawn from Plaintiff's SAC, (ECF No. 26), and are assumed to be true for purposes of this Memorandum & Order.

3    To the extent Defendant raises Accosta v. Lorelei Events Group Inc., No. 17-CV-7804, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022), and Grant v. Global Aircraft Dispatch, No. 720074/2019, 2021 WL 6777500 (Sup. Ct. N.Y. Apr. 20, 2021), as support for the proposition that Vega has not been "universally adopted or applied by New York courts," the Court notes that neither of these cases discuss Vega and, as such, the Court does not find them persuasive. Accord Harris, 2022 WL 16941712 at *10; Rath v. Jo-Ann Stores, LLC, No. 21-

2022 WL 17553319

CV-791S, slip op. at 13-14 (W.D.N.Y. Nov. 29, 2022) (found in this Case Docket at ECF No. 54-1). This is especially true considering the plethora of authority to the contrary.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 3809920
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Shawn MACHICOTE, Petitioner,
v.
Robert E. ERCOLE, Superintendent, Respondent.

No. 06 Civ. 13320(DAB)(JCF).
|
Aug. 25, 2011.

*ADOPTION OF REPORT AND RECOMMENDATION*

DEBORAH A. BATTS, District Judge.

*I. BACKGROUND*

**\*1** Now before the Court is *pro se* Petitioner Shawn Machicote's November 20, 2006 Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging his conviction in New York State Supreme Court, New York County, for murder in the second degree. Petitioner alleges that: (1) his right to due process was violated by the admission into evidence of statements he made to detectives while incarcerated in North Carolina on unrelated charges; (2) his rights to a fair trial, due process, and equal protection were violated when the trial court overruled defense counsel's preemptory challenges against prospective jurors; and (3) his Sixth Amendment right to confront witnesses against him was violated by the introduction at trial of hearsay statements from a witness. (Report at 1.) On December 8, 2006, the Petition was referred to United States Magistrate Judge James C. Francis IV for a report and recommendation.

Judge Francis' January 18, 2008, Report and Recommendation (the "Report") recommends that Petitioner's habeas corpus Petition be denied. (Report at 1.) Specifically, Judge Francis recommends that the Petition be denied because: (1) statements Petitioner made while incarcerated in North Carolina were not made under coercion beyond the mere fact of imprisonment, and the state court's decision to admit those statements was not contrary to, and did not involve the unreasonable application of, clearly established federal law; (2) proper procedure was employed by the state court in overruling defense counsel's preemptory

challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and preemptory challenges guaranteed by New York state law can not be challenged by federal habeas corpus review; and (3) in-court statements challenged by Petitioner were not hearsay because they were admitted to establish the witnesses state of mind, and review of the Petitioner's Confrontation Clause claim is barred because of procedural default during the state court proceedings. Petitioner filed untimely objections to Judge Francis' Report, which the Court will nevertheless consider.

For the reasons set forth below, Judge Francis' Report is adopted in its entirety, and Petitioner's Petition for the writ of habeas corpus is HEREBY DENIED.

*II. DISCUSSION* [1]

A. Objections to the Report and Recommendation
"Within fourteen days after being served with a copy [of a Magistrate Judge's Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b) (2); *accord* 28 U.S.C. s 636(b)(1)(C). The court may adopt those portions of the Report to which no timely objection has been made, as long as there is no clear error on the face of the record. *Wilds v. United Parcel Serv., Inc.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003). A district court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

**\*2** "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* 2008 WL 4810043, at \*1 (S.D.N.Y. Nov.3, 2008); *see also Ortiz v. Barkley,* 558 F.Supp.2d 444, 451 (S.D.N.Y.2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original Petition.") (citation and internal quotation marks omitted). After conducting the appropriate levels of review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C).

2011 WL 3809920

The objections of *pro se* parties are "generally accorded leniency and should be construed to raise the strongest arguments that they suggest." *Howell v. Port Chester Police Station,* 2010 WL 930981, at *1 (S.D.N.Y. Mar.15, 2010) (citation omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Id.* (quoting *Pinkney v. Progressive Home Health Servs.,* 2008 WL 2811816 (S.D.N.Y. July 21, 2008) (internal quotations marks omitted)).

On April 29, 2008, Petitioner filed untimely objections[2] to Judge Francis' Report (the "Objections"). Reading Petitioner's letter in the most lenient manner possible. Petitioner objects to Judge Francis' rejection of Petitioner's Confrontation Clause claim on the grounds that ineffective assistance of counsel cures the procedural default in that claim.

Petitioner did not object to Judge Francis' Report on *Miranda* and *Batson* claims and, accordingly, the Court will review these issues only for clear error. *Indymac Bank, F.S.B.,* 2008 WL 4810043, at *1. Because Petitioner objected to Judge Francis' recommendation on the Confrontation Clause claim, the Court will review that claim *de novo.* 28 U.S.C. § 636(b)(1)(C).

B. Legal Standard
Under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *accord Hoi Man Yung v. Walker,* 468 F.3d 169, 176 (2d Cir.2006); *Ernst J. v. Stone,* 452 F.3d 186,

193 (2d Cir.2006). The phrase, "clearly established Federal law," limits the law governing a habeas Petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin,* 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (quoting *Williams,* 529 U.S. at 365); *accord Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006).

**\*3** "The 'unreasonable application' standard is independent of the 'contrary to' standard ... [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law." *Henry v. Poole,* 409 F.3d 48, 68 (2d Cir.2005) (citing *Williams,* 529 U.S. at 410). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. *See Williams,* 529 U.S. at 413. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." *Id.* at 408–10; *see also Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable.").

Moreover, under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also Parsad v. Greiner,* 37 F.3d 175, 181 (2d Cir.2003) ("This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

C. Miranda Claim
Judge Francis found that statements Petitioner made while incarcerated in North Carolina were not made under coercion beyond the mere fact of imprisonment, and the state court's decision to admit those statements was not contrary to, and did not involve the unreasonable application of, clearly established federal law. After reviewing Judge Francis' findings for clear error on the face of the record, the Court ADOPTS Judge Francis' recommendation that the Petitioner's

2011 WL 3809920

Petition for the writ of habeas corpus on this claim be DENIED.

D. *Batson* Ruling and Peremptory Challenges Claim

Judge Francis found that proper procedure was employed by the state court in overruling defense counsel's preemptory challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that peremptory challenges are guaranteed by New York state law, not federal law, and thus cannot be challenged under federal habeas corpus review. After reviewing Judge Francis' findings for clear error on the face of the record, the Court ADOPTS Judge Francis' recommendation that the Petitioner's Petition for the writ of habeas corpus on this claim be DENIED.

E. Confrontation Clause Claim

1. Procedural Default

**\*4** Judge Francis recommends that Petitioner's Confrontation Clause claim be barred because of procedural default during the state court proceedings, and even if Petitioner's Confrontation Clause claim was not barred, it would fail on the merits.

Petitioner contends that the admission of Stephanie Arthur's testimony regarding out of court statements identifying Petitioner as the shooter violated his Sixth Amendment right to confront witnesses against him.[3] The Respondent argues that this claim is procedurally defaulted because the Petitioner did not clearly raise it as an objection, on constitutional grounds, during trial.

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Cotto v. Hebert,* 331 F.3d 217, 238 (2d Cir.2003) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). A state procedural bar qualifies as an " 'independent and adequate' state law ground where 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.' " *Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 126 (2d Cir.1995) (quoting *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Here, the Appellate Division found Petitioner's Confrontation

Clause claim unpreserved because Petitioner's objection to Ms. Arthur's testimony failed to reference any constitutional grounds for the objection. *People v. Machicote,* 23 A.D.3d at 265, 804 N.Y.S.2d at 78 ("To the extent that defendant is raising a constitutional claim, such claim is unpreserved and we decline to review it in the interest of justice.").

Under New York's contemporaneous objection rule, an issue is properly preserved for appellate review only if the party raised an objection at trial. N.Y. C.P.L. § 470.05(2). Even if there is an objection to the admission of testimony at trial, to preserve a constitutional claim grounded on the Confrontation Clause, New York law demands that counsel specify the constitutional dimension of the objection. *E.g.,* *People v. Quails,* 55 N.Y.2d 733, 734, 431 N.E.2d 634, 635, 447 N.Y.S.2d 149, 150 (1981). "If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with ... a * contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Peterson v. Scully,* 896 F.2d 661, 663 (2d Cir.1990); *see also Wainwright v. Sykes,* 433 U.S. 72, 82–86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Garcia v. Lewis,* 188 F.3d 71, 78–79 (2d Cir.1999).

Here, Petitioner's trial counsel objected to Ms. Arthur's testimony at trial, but counsel made no mention of Petitioner's right to confront witnesses, or any constitutional grounds for his objection. Counsel's primary reason for objecting was only that Ms. Arthur could not independently identify Petitioner as the shooter and that her entire testimony should be stricken on that basis. (Tr. at 431–36). Therefore, the Appellate Division's holding that any constitutional claim was not preserved for review is not contrary to, or an unreasonable application of, clearly established federal law.

**\*5** A federal habeas court may not review a prisoner's claim if that claim was procedurally defaulted in state court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Excuse of procedural default requires a showing that some external impediment actually prevented counsel from raising the claim. *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. *See Reed v.*

*Ross,* 468 U.S. 1, 12, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *Trottie v. Mantello,* No. 98 Civ. 5581, 1999 WL 187202, at *4 (S.D.N.Y. April 6, 1999).

If the petitioner is unable to meet the cause and prejudice standard, his claim may still be heard if he can show that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750. However, only in an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," will "a federal habeas court grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496; *accord Spence v. Superintendent, Great Meadow Correctional Facility,* 219 F.3d 162, 170 (2d Cir.2000).

Here, Petitioner has not shown that either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions apply. Petitioner cannot meet the cause and prejudice standard because Petitioner has proffered no compelling explanation for counsel's failure to make a constitutional objection to Ms. Arthur's testimony during trial. Nor is this an "extraordinary case" that has clearly "resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Consequently, Petitioner's Confrontation Clause claim is barred

### 2. Petitioner's Hearsay Claim Fails on the Merits

Even if the Petitioner's hearsay objection was sufficient to raise a Confrontation Clause claim, the claim would also fail on the merits. "It has long been the rule that '[s]o long as ... statements are not presented for the truth of the matter asserted, but only to establish a context ... the defendant's Sixth Amendment rights are not transgressed.' " *United States v. Paulino,* 445 F.3d 211, 216 (2d Cir.2006) (quoting *United States v. Barone,* 913 F.2d 46, 49 (2d Cir.1990)); *see also Rolland v. Greiner,* No. 02 Civ. 8403, 2006 WL 779501, at *3 (S.D.N.Y. March 27, 2006) (no Confrontation Clause violation when court admitted testimony of police detectives about a non-testifying co-defendant's statements inculpating Petitioner for the purpose of explaining what led detectives to interview defendant five years after crime). Since Ms. Arthur's statements were admitted only to show her state of mind and to establish a context for her identification of the Petitioner, there was no violation of the Petitioner's Sixth Amendment rights.

### F. Newly Presented Ineffective Assistance of Counsel Claim

**\*6** Included with Petitioner's Objections was a copy of a motion to vacate judgment that Petitioner filed in state court, alleging ineffective assistance of counsel. Ineffective assistance of counsel can excuse procedural default at the state level, but the ineffective assistance of counsel claim must first be presented in state court. *See Edwards v. Carpenter,* 529 U.S. 446, 451–454, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *DiSimone v. Phillips,* 461 F.3d 181, 191 (2nd Cir.2006). At the time of his Report, Judge Francis noted that Petitioner's ineffective assistance of counsel claim was procedurally barred because Petitioner did not raise it during the state court proceedings. (Report at 37.) In an effort to cure that default, Petitioner filed a motion in state court to vacate his judgment on the grounds of ineffective assistance of counsel. While Petitioner's state court motion to vacate may have cured the procedural default in his ineffective assistance of counsel claim [4], Petitioner raises this argument for the first time in his Objections, despite the fact that in earlier filings Petitioner specifically denied any claim for ineffective assistance of counsel. (Opp'n to Respondent's Mem. Law at 2.)

The Court of Appeals for the Second Circuit has not decided whether a district court must consider a new legal argument raised for the first time in objections to a magistrate judge's Report and Recommendation. One U.S. District Court in Vermont, *Wells Fargo Bank N.A. v. Sinnott,* 2010 WL 297830, at *2 (D.Vermont), adopts the 11th Circuit's approach to new legal arguments, as described in *Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir.2009) (holding that in order to preserve the efficiencies afforded by the Magistrates Act, a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.) [5]

Applying this standard here, the Court finds that it does not need to address Petitioner's new legal argument because: (1) Petitioner did not make an ineffective assistance of counsel argument before Judge Francis when he had the opportunity to do so; (2) the record indicates that Petitioner was satisfied with counsel; (3) Petitioner only attempted to bring an ineffective assistance of counsel claim after it was suggested in Judge Francis' Report as a possible cure to cure his Confrontation Clause claim's procedural default; (4) the Court is unaware of any intervening case or statute that has changed the state of the law regarding procedural default or ineffective assistance of counsel claims; (5) the resolution of the new legal issue raised here is not open to a serious question of law; and (6) efficiency and fairness lean strongly in favor of not considering Petitioner's new legal argument as

it would effectively eliminate any efficiencies gained through the Magistrates Act and would unfairly benefit Petitioner who changed his tactics after issuance of the magistrate judge's Report and Recommendation. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988) ("an unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate.")

**\*7** Finally, no manifest injustice will result by the Court declining to consider Petitioner's new argument. To prevail on an ineffective assistance of trial counsel claim, Petitioner must show: (1) that counsel's performance was deficient; and (2) actual prejudice to the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner would need to show that trial counsel's conduct fell "outside the range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner's state court motion to vacate judgment for ineffective assistance of counsel was denied, and it would be denied here as well. The record shows zealous representation of Petitioner by counsel at trial, and there is no indication that counsel's failure to object to Ms. Arthur's testimony on constitutional grounds

resulted in actual prejudice as the claim would still fail on the merits because the challenged statements by Ms. Arthur were not hearsay. *See supra.*

Thus, the Court declines to consider Petitioner's ineffective assistance of counsel claim raised for the first time in Petitioner's Objections to Judge Francis' Report.

### *III. Conclusion*

Having reviewed the January 18, 2008, Report and Recommendation of Magistrate Judge James C. Francis IV for clear error on the first two claims, and *de novo* on the third claim, the Court HEREBY APPROVES, ADOPTS, and RATIFIES the Report in its entirety, and Petitioner's Petition for the writ of habeas corpus is DENIED. The Clerk of the Court is directed to close the docket in this case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 3809920

---

## Footnotes

1    The Factual Background is set forth in detail in Judge Francis' Report and will not be reiterated here. (Report at 2–15.)

2    After being granted several extensions, Petitioner filed his Objections one day late, on April 29, 2008. Attached to his Objections was a copy of Petitioner's motion to vacate judgment pursuant to New York State C.P.L. § 440.1 that Petitioner filed in New York State Supreme Court. Petitioner requested a delay in ruling on the Report so that the state court could rule on his motion to vacate. On December 8, 2008, Petititioner wrote the Court asking of the status of his habeas petition. On January 16, 2009, the Supreme Court of the State of New York, New York County, denied Petitioner's motion under § 440.1 and there is no record of Petitioner appealing this decision.

3    Ms. Arthur was one of two witnesses that witnessed the shooting, but did not inform the authorities of what she saw until several months later. During trial, Ms. Arthur testified that she "didn't see him [Mr. Machicote] shoot the guy, but after a while, after I heard that it was the guy Shawn in the rap video, I put two and two together." (Tr.(2) at 431.) Defense counsel objected to the testimony of Ms. Arthur because she was "not testifying from her recollection," but instead from what she had heard from others. (Tr.(2) at 431–32.) The court refused to strike Ms. Arthur's testimony on this point, but instructed the jury that what Ms. Arthur heard

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 3809920

from others was admissible only insofar as it informed her mental state. (Tr.(2) at 437.) At that point, Mr. Petitioner's counsel moved for a mistrial, but the trial judge denied the motion. (Tr.(2) at 437.)

4     On June 30, 2008, Petitioner's state court motion to vacate judgment for ineffective assistance of counsel was denied because "defense counsel's representation, in the Court's view, was of a far higher level of effectiveness and competence than the minimal constitutional standard." *People v. Machicote,* No. 11169–94, denial of motion to vacate at 8 (N.Y.Sup.Ct.N.Y.Cnty.Crim.Term, Jan. 16, 2009). This Court can find no record of an appeal of the decision denying Petitioners motion to vacate.

5     The District Court of Vermont laid out a six factor test for determining if any new arguments should be allowed. *Wells Fargo,* 2010 WL 297830, at *3: "(1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new legal issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered."

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.